Case number 143543 Franklin Park Lincoln Mercury Inc v. Ford Motor Company Argument not to exceed 15 minutes per side Mr. Nackiewicz for the appellant Mr. Nackiewicz for the appellant Good morning. I would also like to reserve three minutes of rebuttal time if I may. You may. May it please the court, my name is Tim Nackiewicz and I represent plaintiff appellant Franklin Park Lincoln Mercury. This is not the first time that the parties have been before the court, and I know this court has recently affirmed the history and remedial purpose of the Dealer Act. And Franklin Park has exhaustively explained his positions in his brief, so I will not replow this covered ground. I wish to only highlight a couple critical issues. As this court knows, this appeal is about one facet of the relationship between Ford and Franklin Park. That is the Dealer Act's requirement that Ford shall not fail to act in good faith. The question presented is whether a jury, and not the trial judge, should have resolved this issue. Franklin Park submits that this was a jury question and the judge should not have taken it from the jury. The main disconnect between the parties' positions is the standard upon which Ford's conduct must be evaluated. The trial court used the commercially unjustifiable standard from the Jim White case. As we've explained in our brief, we think the best course of conduct would be to overrule Jim White and leave it to the court to make that decision. But overruling Jim White is not necessary to find for Franklin Park in reverse. That's good news for you. It is, Your Honor. If Jim White stands, the commercially unjustifiable standard needs to be addressed, because the question of what is commercially unjustifiable conduct is not answered by Jim White. Ford has advocated that commercially unjustifiable conduct, if there is a commercial justification for conduct, it cannot be commercially unjustifiable. This is the gloss on the concept that the court accepted. The court repeatedly said that because there is a commercial justification for Ford's conduct, it passed muster. Franklin Park submits that this cannot be the case, because any conduct will have some sort of justification, and it works in and around the good faith requirement. What if we just imply or infer that it's reasonably commercially justifiable? In other words, we don't go to the extremes you're talking about. I get your point, that in this very case, you might imagine commercial explanations for doing two opposite things, wanting one dealership or two in the Toledo area, and that starts to look funny. But all that means is the gloss you put on it has to be reasonably commercially justifiable, and it seems to me our prior decision, even though that wasn't the exact point at issue, this question, they do give some good commercial explanations for why they did what they did that avoid your slippery slope concerns. Well, I think the issue is that I think as you agreed or as you indicated, the concept is not just commercial unjustifiability based on one justification. It has to be something else. So Franklin Park submits that the conduct at issue has to be examined overall and determine whether it was commercially unjustifiable or not. And that's not what the trial court did. The trial court said there is a commercial justification for what happened, and therefore it passes muster. But it was pretty reasonable. The idea that it's a good idea to have two dealerships, that's good for customers, keeps both dealerships on their feet, gives you more options, gives you some competition. And I think that, I'm sorry. I don't think Ford's in the business of losing money. I mean, it's, well, you know, from time to time they have been, but not recently. And so why isn't that work? And I think that's a fair conclusion that the jury could draw. Jim White says that the trier of fact is to determine whether something is commercially unjustifiable or not. And I think it's a jury question to make that determination. I mean, this seems to me, you point out a nice problem with what could be an extreme consequence of their position. But the extreme consequence of the position, as I'm understanding it from the briefs, is these things always go to juries no matter what. This is inherently only a jury question. And, you know, that seems to me to not be right either. I'm afraid I don't know how often. You're saying, what's the case where this issue does not go to a jury? It would be if there's not any evidence to support. Well, it would be if there's no evidence to support a finding of commercial unjustifiability. It's only the no evidence situations where there is no commercial justification that would not go to a jury. I think that's correct. And the cases that find that there is no claim, that the claim for lack of good faith fails, the court says there's no evidence of bad faith here. And I think, in thinking about this, it's important to go back to basics. The Jim White case relies on the Ohio Supreme Court case Master Chemical v. Inkarat, and that's the foundation for the commercial unjustifiability standard that this court imported into the Dealer Act. In Inkarat, a corporate officer embezzled a large sum of money from Toledo Trust by depositing checks into a different corporate account that he had control over. The bank had a procedure that it wouldn't question deposits from one corporate account to another, and Inkarat took advantage of this and embezzled more than a million dollars. To prevail, the Inkarat court said that Master Chemical had to show that the bank either had actual knowledge of the embezzlement, that the bank acted in bad faith, or that the employee was paying personal debts with company money. Well, there was no actual knowledge and there was no paying of personal debt with company money. So to succeed, Master Chemical had to prove bad faith. In considering the idea, the court did acknowledge that courts have asked whether the bank's conduct is commercially unjustifiable. In elaborating, the Inkarat court noted that there's two types of bad faith here. There's a willful blindness, and then there is conduct that which imports a dishonest purpose and implies wrongdoing or some motive of self-interest. Now, Toledo Trust said, if we're to scrutinize all these kinds of transactions, it's going to cost a lot more money. The court said, no, this is still bad faith. The court found it commercially unreasonable to have this policy where it was not going to question corporate deposits to intercorporate accounts. The court said, that's commercially unreasonable and that you're circumventing protections for the bank's customers to further the bank's own self-interest. So Inkarat itself dispels the notion that if there's any justification for conduct, it passes muster because the bank had a justification, saving money. And the court said, no, that doesn't count. It's still commercially unjustifiable. So Inkarat dispels the notion that, as the trial court said, if there is a justification, it passes muster. So considering Inkarat, and then the dealer act is remedial and should be broadly construed, the only way to analyze commercial unjustifiability. How do you look at our prior decision in this? You have to acknowledge that the prior decision's finding is a matter of law. There's legitimate, reasonable commercial justification for what they did. Is your point, I accept that finding, but I just want to go to a jury and show there's another way to look at it. Is that the idea? Is that what you're – Are you saying the prior appeal, Your Honor? Yeah, yeah. In the prior appeal. That prior appeal is saying, as a matter of law, there is a commercial justification or two for what they did. Absolutely. So we can't revisit that. So what you want to do is have a jury say, okay, we get it that we have to assume that's true, but we still think there's bad faith nonetheless. I acknowledge that in the prior proceeding, the trial court said there is a commercial justification for what Ford did and that this court said, yes, we agree, there is a justification for what Ford did. But he did so as a matter of law. Yes. Okay, so that can't be revisited. So what do you do – how does this look in front of a jury? In front of the jury, if you get what you want, the jury's instructed, well, you can't revisit the question whether Ford had a reasonable commercial justification for the way it – its reason for having – keeping two dealerships in Toledo. That was legitimate all along. Is your jury trial going to then be – even though they had a legitimate justification for what they did, they still had malice and wanted to hurt us nonetheless. And if you think so, we win, despite that reasonable commercial justification. Is that the way you're thinking this goes? I think we would say it is established that Ford had a justification for what it did. It is your job, jury, to find out to determine whether their conduct was overall justifiable. Just because there is a justification for something doesn't mean it is overall justifiable. And I think the Encrod court bears that out. There was a justification for the bank to have their policy of not questioning intercorporate deposits. It saved them money. But the Encrod court said, that's not good enough. It's still bad faith. So should it be a preponderance of being commercially justifiable is the key test, or should it be the principal reason is commercially justifiable, or how would you frame the test for good faith here? And there's no cases that really speak to that, but it seems to me that you're right that a preponderance of some sort, a balancing test, adding up all the pros and cons of the transaction, whether a transaction or a course of conduct could have a great upside, but it could have a huge risk. And because of the risk, overall it is commercially unjustifiable. And that's really the essence of what we're saying here. So the cons here, when this case goes to a jury, if you get what you'd like, the cons here are, would it start with the fact that Ford subsidized this transaction? Is that in your view a con? It would start with the fact that the Lincoln Mercury market share has been declining over time. The general economic conditions in Toledo, there's lots of evidence that because of those declines, two dealerships were not warranted. So you're just attacking as a matter of law ruling that it was commercially justifiable to want two dealerships. That's the one thing you can't attack. That seems to be the main thing you want a jury trial over. Aren't we bound by the idea that it's commercially justifiable in this setting to want two dealerships? I don't understand how you can get around that. I thought you were going to say, well, despite that, it was just ill will, it was malice, and maybe that somehow gets you to bad faith. I don't know. That's what I'm trying to figure out. But if your main con is going right after that finding, that makes me nervous. I understand. And that's not where I'm after. So three things. One, again, as I said, I think the entirety of the facts need to be examined and totaled up, and the jury needs to decide whether it's unjustifiable or not. Okay, got it. What are your specific pieces of evidence? What's the jury going to hear that allows them to rule for you? In performing, well, one, it's the totality of the circumstances, whether it was justifiable or not to do what they did. That's not evidence. I can give you a list of the, or I can explain the fact pattern that I'm talking about, but I do want to address the two other things that you said, and I'm running short of time. Maybe it's just worth thinking about for rebuttal. That's a bit of rebuttal. You can think about it. But it would be nice to know what it is you want the jury to hear that allows them to take this as a matter of law ruling and still be able to say there was not good faith, right? Sure. Since I have five seconds left, I will address those three things on rebuttal. Thank you. May it please the Court. Dominic Perella on behalf of Ford Motor Company. Judge Sutton, you asked, quote, The answer to that question is yes. This Court found in the first case, and the District Court found both in the first and second cases, that there were legitimate business interests here, that the action was taken in good faith and with good cause, and that there was, quote, absolutely no evidence that Ford wanted to drive Franklin Park out of business. But don't you think there's something to their point that it's funny to think of this test as you win as long as you can find some commercially justifiable reason for what you did, including just making more money, which sometimes is zero-sum and completely against the other side. So it seems to me there has to be some limitation on that point. I think that what my colleague is driving at is that he thinks that the test we're proposing is that as long as you make more money at the end of the day, you can do whatever you want. You can, you know, threaten dealers. You can undercut dealers. You can do whatever you want. That's not the test we're proposing, and I don't think that's the test that any of the cases are proposing. The test of commercial justifiability to me is simply a matter of is there a legitimate reason, not just a business reason, which is he strips out the word legitimate when he discusses this. Is there a legitimate reason for what Ford wanted here? And this Court already found, and the District Court found, that there was. Ford had its own internal studies that are at Record Excerpt 82 in the docket that said that there should be two dealerships in this market. The internal study said that the throughput in this market, i.e., the number of sales, was too large for one dealership, and there was testimony from all of the Ford deponents and other people that Ford relied on those studies. Hypothetically thinking, if you said it was enough to have a legitimate reason, what if the huge balance of factors were not legitimate reasons? So a mixed motive. Yes, and heavily tilted against this de minimis legitimate reason. Shouldn't there be a jury in that kind of situation? I think, Judge Moore, that I can safely concede that there could be a jury in that situation, but that's simply not these facts at all. I mean, there's just nothing in the record suggesting that Ford had an adverse motive. And again, district court finding in the first case, which this court affirmed, quote, absolutely no evidence that Ford wanted to drive Franklin Park out of business. There's just no there there. I mean, this is a case in which they haven't pointed to anything Ford's done wrong. And I wanted to draw the court's attention to a couple of comments that they made in their reply brief, which also came up during my colleague's oral argument. They said that the test they're advocating is that a jury should decide, essentially, whether a car manufacturer's decision was the best decision it could have made, considering all the costs and benefits. And I guess I would submit to you that that's not what we want juries doing. The good faith test is not whether a company made the best possible decision. The question is whether they acted in good faith, whether they acted with malice, or otherwise did something unjustifiable, not whether one could question whether their business decision was the best one. In fact, at reply brief 13 and 14, Franklin Park says, quote, there were business reasons supporting Ford's conduct, and there were also business reasons to the contrary. And this is simply a disagreement about whether Ford's course of action was the best one. Could you explain what the business reason for the one-day transfer was? Sure. The best evidence in the record of that is from the Brondis deposition, which is a record excerpt. Pardon me for one moment. I believe it's 82-9, although I'm not entirely certain of that. But in any event, Mr. Brondis, the purchaser of the dealership, testified, and it's in the record, that he wanted to stay at this location for at least a day, if not longer, so that he could have time to get the necessary approvals from the state of Ohio to move the dealership down the road. Now, as you all know from reading the decision below, the district court said, well, look, there's no evidence Ford was structuring this transaction in such a way that they were trying to avoid a protest proceeding, but I'll assume that a jury could infer that that's what was going on. And it went on to find that even if that were the case, that would not be bad faith. That would be a party to a commercial transaction taking advantage of the exceptions provided by the law. Now, I agree with that rationale, but I don't even think the court needs to go that far. And if I could, I'd like to walk through why. The statute at issue here, which is Section 4517.50, provides two exceptions to the protest proceeding idea. The first exception, let me start with the second one, actually. The second exception is the one on which Franklin Park focuses. This is the one where they say if you continue to operate at the present location, then you don't have to have a protest proceeding. And they say, well, you structured this transaction so that you'd operate at the present location for a short period of time. But the dealer board in this case, the state agency, and the state courts considered this idea, and they both concluded that this idea of structuring was completely irrelevant because the other exception applied anyway. The first exception in 4517.50 says that if you relocate an existing franchise less than a mile, there's no right to a protest. And the dealer board found, I'd like to read it. It's from document number 11-9. This is the state agency. The notice requirements of Division A do not apply if the relocation of an existing new motor vehicle dealer is to a location less than one mile from its previous location. All parties concede that the distance between the 1361 Conant Avenue location and the 1511 South Reynolds location is less than a mile. As such, Ford was not required to give the protestants the statutory notice set forth in Division A. I think that that's quite relevant here, first of all, because it makes this structure idea sort of a non sequitur. Why would they bother? But second of all, because even if there were structuring, it's categorically impossible that it could have harmed Franklin Park. They had no notice right regardless. So why did your side do it? Again, I mean, the evidence in the record is pretty spotty on that, to be honest. But what there is, as I mentioned, Mr. Brondis said, my understanding of what needs to happen here is that I need to operate at this location for a period of time, whether it be a day or whether it be a longer period, until the state of Ohio gives me permission to move. And the same concept appears in the Brinkman deposition. Mr. Brinkman was a Ford proponent, and he said, my understanding is that we had to do this to comply with Ohio law. That's the extent of the record. But we don't know what part of Ohio law they thought was important. There's nothing in the record about that. But again, I think for three different reasons, this doesn't get Franklin Park anywhere. The first one being the one I just mentioned, there can't be any harm from this. The second one being, I think the district court was quite right, that even if this were, you know, you wanted to assume that this were Ford taking advantage of a statutory exception, and again, there's no evidence to that effect, this would be something that parties do in commercial transactions all the time. Ohio law says, and this court's decision in Bill Call says, that in the context of a contract, you know, parties have the right to hew their contract right up to the limit. If the contract provides an exception, and a party takes advantage of it, there's no bad faith in that. And I think that's quite correct. If you had an opportunity to straighten out Jim White one direction or the other, I mean, I'm actually now looking at the statute, and, you know, it refers to the observance of reasonable commercial standards of fair dealing. I mean, we are bound by circuit precedence, so I mean it's, but I'm just curious if there's anything about the decision that you think doesn't get it quite right. Well, Judge Sutton, I think the important point is you are, in fact, bound by the circuit precedent, and Ohio law has not changed at all for the reasons set forth in our brief. Putting that aside, I think that the fact of the matter here is the Ohio cases are to the same effect, and I would point the court not just to INCRA, but to the Snowville case that we cite in our brief. This is a 2012 case, and it looks at the UCC statute, the same one cross-referenced in this dealer statute, and it concludes again, even after this amendment that my opponent points to, that the test is commercial unjustifiability. And, of course, this court isn't writing on a blank slate. It's following Ohio law in this diversity context. So what do they do about the fact that, you know, it seems to have a conjunctive requirement, good faith is honesty one, and observance of reasonable commercial standards? Well, I guess that seems to suggest dishonesty or will by itself would be enough, although that seems odd to me if the ill will didn't have any commercially unreasonable effects or consequences. Well, I guess several answers. The first one is, of course, the Ohio courts have construed it the way they've construed it. It's not entirely satisfying, but it's the fact. The second point, I guess, is that no matter what the test is here, I think, even if we were writing on a blank slate, there's nothing in the record suggesting Ford had ill will. Again, the district court found in the first case that there's absolutely no evidence. They were trying to harm Franklin Park, quote, unquote. And so, you know, I think we have a situation here where, you know, while it would be nice in the abstract to iron out commercial justifiability, there's no reason for the court to go that far. The fact of the matter is the findings that are already law of the case here say that there's nothing commercially unjustifiable, nothing illegitimate, no ill will going on in this case whatsoever. Let me just point out one more thing with the balance of my time, which is what's really going on in this case, if you look through the record, and I encourage the court to look both at the e-mails that are appended to document 82-1, which is the Fleischer deposition, and also to Mr. Fleischer's affidavit, to which my colleague points. What's going on here is that Mr. Fleischer was asking for six years for a monopoly in the Toledo market, and Ford said, we don't think there should be a monopoly. We think there should be two dealerships. That went on. There's a series of e-mails. And then in 2008, when Mr. Fleischer, Franklin Park's principal, got wind of the fact that Ford was not going to close the second dealership as he desired, he sent an e-mail, and it says, this is document 82-1, Exhibit 8, we look at this as an attack on our long-term survival, and we will oppose slash fight until one of us is no longer standing. Mr. Fleischer has now been litigating this case for seven years, and there's never been any evidence in the record that Ford did anything other than disagree with him about closing the second dealership. I would urge the court to affirm. Thank you. Thank you. All right, in my three minutes remaining, I will address your question, Judge Sutton. First, the incorrect case said that bad faith is evidenced by circumventing statutory protections to further one's self-interest. So how here was a statutory protection circumvented? This goes back to the process proceeding that my colleague indicated. I know the court knows, but I'll briefly indicate that. There's an exemption, right? There is. Okay. So clearly, one can follow the letter of the law and still engage in bad faith. For example, the – Is it bad faith to invoke an exemption that the law provides? It is if you do it in bad faith. Well, that's a circle. Well, let me give you an example. For example, the dealer – When I file my taxes, let me tell you, I got a lot of bad faith when I say, I am going to take every single exemption in my mind. If someone could examine my mind, they would see someone who does not like people taking money out of their wallet. Well, that's tax minimization, not avoidance. But I understand where you're coming from. It's the exact same thing. I don't understand how it's not exactly the same thing. It's an exemption that the law provides ex ante before anyone does anything, and you're allowed to use it. It's the legislature that before these things even happened said, you get to use this. How can it possibly be bad faith to use it? I mean, even if in your mind you're motivated by greed or I don't want to have to pay anymore or I don't even like that person, I don't understand how that's possibly bad faith under the meaning of the statute. And I understand. I'll give you an example to explain why it can be. The statute says if a manufacturer, such as Ford, wants to move a dealer inside an existing dealer's buffer zone, a 10-mile radius called the relevant market area, or RMA, there is a protest proceeding that must occur which the manufacturer bears the burden to establish good cause for the move. There are three exceptions to the requirement to have that protest proceeding, and I believe my opponent went through the three of them. One of them is if you move a dealership less than one mile, there is no protest. That is the exception to the protest requirement. Well, what if Ford took a dealership and moved it in nine tenths of a mile increments ten times so that the dealership was moved from ten miles away to right across the street from an existing dealership? That's a great example of a formed substance problem. But that didn't happen here. It did not. Because they were within the one-mile limit all of the time, correct? So what I got confused by at one point in this case is did the move for one day obviate the one-mile limitation? But the answer is no. They were still within the one mile before the one-day move and after the one-day move, right? I think they're two separate things. Okay. Both the old location and the new location were within the ten-mile buffer zone I mentioned. Were they not within the one mile? It was less than a mile from the old Maumee Point to the new one. You concede they qualify for the exemption. You concede they qualify for the exemption. I do. I'm merely trying to illustrate that you can qualify for the exemption, but do it in a bad faith manner. Your hypothetical illustrated a formed substance problem where sometimes courts say that does violate the law, but that's not this case. What is the bad faith here? To the two other points that I was going to explain. Your red light is on, so you're going to have to do this really quickly. Okay. Under INCRA, their willful blindness can be bad faith. In this case, Ford admitted that it did not perform a market study or consider how the Verun-Brandes transaction would impact Franklin Park. In fact, it ignored Franklin Park's repeated protestations that if this deal goes through, it will harm Franklin Park. Ford not only let it go through, it funded it. Without Ford's funding and assistance, it wouldn't have happened. And so to sew up the final point, Judge Sutton, the evidence is that Ford desired, facilitated, underwrote, and ultimately caused the Verun-Brandes transaction over Franklin Park's repeated objections at a time when Ford was aggressively consolidating dealerships, admittedly over-dealered, with the intent to consolidate all its brands under one roof at Brandes, despite the fact it would harm Franklin Park. And that's the narrative that we would explain to the jury and say, you need to figure out whether this conduct was overall commercially unjustifiable. Thank you, Counsel. The case will be submitted. Thank you, Judge. We'll call the next case. Case No. 14-5597, Cincinnati Insurance Company v. Larry Banks, et al., arguing not to exceed 15 minutes per side. And Mr. Chastain for the appellant.           Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.